UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WILLIE TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 1:06-cv-1454-DFH-WTL |
| FIRST HORIZON HOME LOAN | ) | |
| CORPORATION f/k/a FT MORTGAGE | ) | |
| COMPANIES, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case arises out of a couple's financial difficulties and the apparently inept actions of a mortgage company employee whose job was to try to assist the couple to avoid foreclosure on their home. The parties entered into a forbearance agreement, and the couple complied with its terms, but the mortgage company went forward with foreclosure. The plaintiff asserts here that the mortgage company either defrauded him or breached the forbearance agreement reached to resolve payment of past due amounts. The matter is before the court on the mortgage company's motion for summary judgment, Docket No. 75. As explained below, the motion is granted in part and denied in part.

*Summary Judgment Standard*

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual issue is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is material if resolving the factual issue might change the suit's outcome under the governing law. *Id.* When ruling on the motion, the court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. *Id.* at 255. The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

*Undisputed Facts*

The following facts are not necessarily all true in an objective sense, but they reflect the evidence through the summary judgment lens, giving plaintiff the benefit of conflicting evidence and competing inferences. Plaintiff Willie Turner and his wife purchased a home in Anderson, Indiana in 1998 and then in 1999

refinanced that home with defendant First Horizon Home Loan Corporation using a 30-year HUD insured fixed rate loan.  The mortgage loan required payment of approximately $900 per month to cover principal, interest, and escrow.  Turner experienced financial difficulties in 2004, and he and his wife filed for Chapter 7 bankruptcy protection in June of that year.  The Turners were also experiencing moisture and mold problems with their home.  Though not delinquent on their loan payments to First Horizon, the Turners elected to surrender their home during the course of their bankruptcy proceedings rather than reaffirm their mortgage and remain faced with a home that needed considerable repair. Accordingly, the automatic bankruptcy stay was lifted.  First Horizon filed a foreclosure lawsuit in state court on January 6, 2005.

On January 7, 2005, the Turners received a Discharge of Joint Debtors under Section 727 of the Bankruptcy Code, 11 U.S.C. § 727.  On that same day, First Horizon sent them two letters.  One informed the Turners that foreclosure proceedings had been filed against them.  The other letter stated that First Horizon wanted to work with them and that there were opportunities for them to "regain control and protect your home."  According to the second letter, the Turners needed to act quickly by contacting the company's Loss Mitigation Department and providing it with the necessary financial information. Unfortunately, plaintiff suffered a physical and emotional breakdown on January 19, 2005.  He and his wife failed to contest the foreclosure or contact

First Horizon's loss mitigation specialists, so First Horizon received a Judgment of Foreclosure on April 7, 2005.

There was not a prompt foreclosure sale following the judgment.  Turner contacted First Horizon a month or so later about the possibilities of returning to his home.  He began communicating with a First Horizon loss mitigation specialist by the name of Jefferson Davis.  The Turners' previous decision not to reaffirm their mortgage during bankruptcy should have disqualified them from participating in such a plan under typical First Horizon and HUD guidelines. Nevertheless, Davis offered Turner a chance to return his family to their home by entering into a forbearance agreement that would allow the Turners to make temporarily reduced payments while occupying the home.

The forbearance agreement, drafted by First Horizon, started with the following two paragraphs:

> This letter is an agreement ("Agreement") that sets forth the terms and conditions upon which Borrower(s) and First Horizon Home Loan Corporation ("FHHLC") have agreed that Borrower(s) will repay the Past Due Amounts owed to FHHLC under the above referenced loan (the "Loan").

> The above referenced loan is in default for the 07-01-04 payment plus any subsequent payments now due as of the date of this Agreement.  The Past Due Amount totals $17,582.82, which includes regular monthly mortgage payments, late charges, and other expenses costs and/or fees. . . .

The letter agreement set forth additional qualifications for entering into the forbearance agreement, which the Turners met.

The key substance of the agreement was in a provision that stated:

REPAYMENT OF PAST DUE AMOUNT: The attach (sic) schedule ("Schedule") shows the total amount the Borrower(s) must pay to FHHLC in order to cure Borrower(s) delinquency as of 07-06-05. We have agreed that Borrower(s) will repay the Past Due Amount over a specified period by making the installment payments shown on the Schedule. Each scheduled monthly payment includes Borrower(s) ongoing monthly payment obligation, and a portion of the past due amount. During the period of the Special Forbearance Agreement, additional late charges may be assessed to the loan. Once Borrower('s) loan becomes current, late charges will be assessed against Borrower(s) only if your account again fails to pay in accordance to the terms of the original note and security agreement. Failure to adhere to the terms and conditions of the Special Forbearance Agreement could result in additional late charges, and the initiation or continuation of Foreclosure.

The agreement also provided that First Horizon retained its rights with respect to foreclosure but would agree to postpone foreclosure proceedings so long as the Turners did not go into default on the forbearance agreement. Failure of the Turners to comply with the agreement would allow First Horizon to terminate the agreement, rendering it "of no force and effect." The Turners acknowledged in the agreement that the terms of their loan and mortgage were not modified by the agreement and that following the cure of their delinquency, those loan and mortgage terms would be back in full force and effect. The agreement specifically provided: "at the conclusion of this special forbearance agreement, Borrower(s) shall resume regular monthly payments pursuant to the terms of the Note and

Mortgage."  This was the agreement despite the fact that the Turners had already received a full discharge of debt from the bankruptcy court.

The last page of the agreement contained the "Schedule", which set forth the payments that the Turners had to make, as stated in the opening paragraph of the agreement, to "repay the Past Due Amount owed" under their loan.  There are only five monthly payments listed on the schedule.  Each of the five required payments was for $500.00, and the first was to be made by July 13, 2005.

Plaintiff Turner timely made each of the five monthly payments and then continued to send additional payments of various amounts to First Horizon.  First Horizon returned those additional payments and chose instead to reactivate the foreclosure proceedings and to force a Sheriff's sale of the property.

For purposes of summary judgment, the evidence would allow a jury to find, and so the court must assume, that the actions of First Horizon's Davis caused the confusion that accompanied the forbearance agreement and the futile attempts to resolve the past due amounts that First Horizon claimed the Turners still owed, even after they had made all the payments called for by the forbearance agreement.  The record does not include any deposition or affidavit testimony from Jefferson Davis.  Instead, First Horizon provided the affidavit of Mr. Davis' superior, Leigh Ann Hammonds, who serves as the company's loss mitigation manager.  She testified that the forbearance agreement was poorly drafted and

should have included a sixth "balloon" payment on the schedule that would have included the total needed to bring the Turners current.  According to Hammonds, the type of special forbearance program that Davis intended for the Turners is one where the defaulting borrower is given a short period of time to make lower than normal payments, during which no penalties are applied.  After that short period, the borrower then either makes a lump sum pay-off of remaining past due amounts or enters one of several types of payment programs with monthly payments that are considerably higher than the original mortgage payments, in order to pay off the past due balance.

Hammonds' affidavit describes Davis' mistake in failing to include the final balloon payment on the forbearance payment schedule and states that Davis also failed to attach an addendum intended to accompany this type of plan, further compounding the problems inherent in the signed agreement.  The addendum would have explained that, upon compliance with the terms of the forbearance agreement, the Turners would have been considered for one of the repayment plans listed on the addendum prior to making the final balloon payment.  Davis topped off his error-laden work by waiting until February 2006 to see if the Turners had reaffirmed their mortgage during bankruptcy.   According to Hammonds, HUD regulations prohibit the type of forbearance program that Davis offered to the Turners if the debtors did not reaffirm their mortgage in the bankruptcy proceeding.

Plaintiff Turner submitted his own affidavit, the affidavit of his mother, and a bank statement to support his contention that he obtained a loan from his mother and offered to pay the entire loan deficiency at the same time that he and his wife entered into the special forbearance agreement.  According to Turner, First Horizon's Davis "did not require or accept this payment and only urged the first $500 monthly payment."  Turner states that he timely made the five payments called for in the schedule and then made a sixth $500 payment.  First Horizon never sent a new schedule or payment plan to the Turners.  After the sixth payment of $500 was returned to Turner on November 29, 2005, he made payments of $1,100 in December, $2,000 in January 2006 and $3,800 in February 2006, all of which were returned by First Horizon.

Despite the efforts that Turner made to find out from First Horizon what could be done to set up a new payment program, no one provided him with a new plan.  In January 2006 Turner received a notice from First Horizon stating that the amount of money he sent that month was insufficient to reinstate the loan and it would be turned over to an attorney to complete the foreclosure.

While Turner was making payments under the forbearance agreement, he was also fixing up the home.  He claims to have expended more than $27,500 on labor and materials for repairs and improvements to the house.  While working on the home, Turner suffered a couple of different physical injuries as well.  After the Sheriff's foreclosure sale in April 2006, the Turners left the home for the last time.

Later that year, Mr. Turner filed this lawsuit against First Horizon in state court, claiming fraud in the inducement, breach of contract, unjust enrichment and an entitlement to damages for personal injury, pain and suffering and the negligent infliction of emotional distress.  First Horizon removed the case to this court on the basis of diversity of citizenship and now seeks summary judgment in its favor on all claims.  Additional facts are noted below as needed, keeping in mind the standard that applies on summary judgment.

*Discussion*

Plaintiff has not opposed summary judgment on the personal injury, pain and suffering, and emotional distress claims.  First Horizon is entitled to summary judgment on those claims.  The fraud, breach of contract and unjust enrichment claims are contested.  The court examines the fraud claim first.

In his complaint, Turner alleged fraud in the inducement to enter into the forbearance agreement.  First Horizon argues that there is no evidence of fraudulent intent, but at most incompetence on the part of Davis.  Turner does not actually dispute that point.  He now contends instead that the actions of Davis and others at First Horizon amounted to constructive fraud.

Under Indiana law, constructive fraud arises by operation of law when a party would otherwise obtain an unconscionable advantage over another.

*Allison v. Union Hospital, Inc.*, 883 N.E.2d 113, 122-23 (Ind. App. 2008) (affirming summary judgment for defendant).  There is no intent requirement.  *Id.*  The elements of constructive fraud are:  (1) a duty existing by virtue of the relationship between the parties; (2) a violation of that duty by making deceptive material misrepresentations of past or existing facts or remaining silent when the duty to speak exists; (3) reliance thereon by the complaining party; (4) injury to the complaining party as a proximate result of the reliance; and (5) an advantage by the party to be charged at the expense of the complaining party.  *Id.* at 123.

Turner claims that First Horizon owed him "a duty of good faith and fair dealing regarding the forbearance agreement contract and during the relationships and proceedings between the parties."  He contends that First Horizon should have provided him with an appropriate payment plan as promised, or at least responded to his requests for information and assistance regarding the forbearance agreement.

Turner's constructive fraud claim fails on the merits because the alleged fiduciary or confidential relationship supposedly giving rise to a duty on the part of First Horizon is based only upon the parties' contractual relationship.  A party may not rely on a contract to create a duty that, if breached, would form the basis of a constructive fraud claim.  *Allison v. Union Hospital, Inc.*, 883 N.E.2d at 123 (affirming summary judgment for defendant), citing *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1273 (Ind. App. 2000) (affirming dismissal under

Trial Rule 12(B)(6) where parties' contract established an ordinary arms-length relationship).   The only basis of the duty asserted by plaintiff is plainly the forbearance agreement.  First Horizon is entitled to summary judgment on the claim for fraud (or constructive fraud).[1]

First Horizon is also entitled to summary judgment on the breach of contract claim.   The undisputed facts show that during the term of the forbearance agreement, First Horizon performed according to its terms:   it refrained from pursuing the foreclosure remedy.  Beyond its five-month term of reduced payments, the forbearance agreement simply failed to provide for any specific terms for final resolution of the Turners' past amounts due.  By its terms, the forbearance agreement indicated, and the undisputed evidence shows that Turner understood, that the parties would have to work out a specific payment plan at the conclusion of that term.  They did not enter into a legally binding agreement on such terms, perhaps because of incompetence or error on the part of Davis for First Horizon, and First Horizon chose to go forward with the foreclosure, ultimately forcing the Turners from the home.

--------

[1]Turner's complaint alleged a classic case of fraud in the inducement, and his response to summary judgment argues constructive fraud, instead.  A party ordinarily may not amend his complaint through arguments raised in response to a summary judgment motion, but the district court has discretion to grant or deny such an amendment. See, *e.g.*, *Whitaker v. T. J. Snow Co.*, 151 F.3d 661, 664 (7th Cir. 1998) (explaining that district court has discretion to grant or deny such an amendment).  The court sees no reason to allow the amendment here because the claim also fails on the merits, as a matter of law.

One claim survives summary judgment, however.  Turner has labeled Count 2 of the complaint as one for "unjust enrichment," but it is better understood as a claim for promissory estoppel, which can support a claim for reliance damages. Turner filed his complaint as a pro se plaintiff, and the court can look beyond labels and headings, especially when dealing with a *pro se* litigant.  The heart of the claim is that Turner relied upon Davis' assurances that he would be able to avoid foreclosure and invested a substantial amount of time and money to repair and improve the house.  He lost the benefit of those efforts when First Horizon completed the foreclosure.

Turner cannot prevail under a theory of unjust enrichment.  To avoid summary judgment under this theory, he would need to come forward with evidence that he conferred a measurable benefit on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust.  *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991).  "One who labors without an expectation of payment cannot recover in quasi-contract." *Id.*, citing *Biggerstaff v. Vanderburgh Humane Society*, 453 N.E.2d 363, 364 (Ind. App. 1983).  Turner's claim based upon his repairs to the house misses the target in two ways.  First, he was not actually expecting First Horizon to pay him for his efforts; instead, he expected that he would enjoy the benefits of his work because he expected, based on Davis' assurances, that he would be able to avoid foreclosure and would keep the home.  Second, a claim for unjust enrichment requires proof that the defendant expressly or implicitly requested the plaintiff to

do the work, or at the very least that the defendant had an opportunity to decline the benefit.  See *Truck City of Gary, Inc. v. Schneider National Leasing*, 814 N.E.2d 273, 280 (Ind. App. 2004); *Wright v. Pennamped*, 657 N.E.2d 1223, 1230 (Ind. App. 1995).  First Horizon pointed out in its brief that Turner has not offered any evidence that Davis or anyone else at First Horizon knew that Turner was making the repairs, let alone that they agreed to them.

Turner's claim based on his repairs to the home fits much more closely the equitable doctrine of promissory estoppel, as embraced by the Indiana Supreme Court in *First National Bank of Logansport v. Logan Manufacturing Co.*, 577 N.E.2d 949, 954 (Ind. 1991).  The plaintiff in *Logan Manufacturing* claimed that the bank had breached a loan commitment agreement, resulting in damage.  The Indiana Supreme Court ultimately held that there was no legally enforceable contract to extend the loan.  But the court held that the borrower could recover its reliance damages under a theory of promissory estoppel.  The court identified the following elements:  "(1) a promise by the promissor (2) made with the expectation that the promisee will rely thereon (3) which induces reasonable reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise."  577 N.E.2d at 954.  In such cases, however, the remedy "may be limited as justice requires."  *Id.* at 956, quoting Restatement (Second) of Contracts § 90 (1981).  The appropriate measure of damages would not be the benefit of broken promise but the reliance damages incurred by the disappointed promisee.  *Id.*; see also *Jarboe v. Landmark Community Newspapers*

of Indiana, Inc., 644 N.E.2d 118, 122 (Ind. 1995), citing with approval *D & G Stout, Inc. v. Bacardi Imports, Inc.*, 923 F.2d 566, 569 (7th Cir. 1991).[2]  Promissory estoppel differs from unjust enrichment in that the plaintiff need not prove that the defendant expressly or implicitly requested the benefit.  It is enough for the plaintiff to show that the defendant reasonably should have expected him to act in reliance upon the promise.  See *Truck City of Gary*, 814 N.E.2d at 279-80 (discussing the two doctrines separately).

In this case, Turner has come forward with evidence, at least for purposes of summary judgment, that would allow a reasonable trier of fact to find that First Horizon promised that it would extend some form of refinancing that would allow him to avoid foreclosure, and a jury could infer that Davis and First Horizon should have expected Turner to rely on that promise.  Davis indicated to the Turners that there would be a way for them to keep their house and that a payment schedule that would allow them to do that would be formulated following the completion of the forbearance payment schedule.  The forbearance agreement was sufficiently specific that a reasonable trier of fact could find that Turner reasonably relied upon it when he carried out substantial repairs on the home.

---

[2]In *Garwood Packaging, Inc. v. Allen & Co.*, 378 F.3d 698, 702-03 (7th Cir. 2004), the Seventh Circuit noted that under Indiana's law of promissory estoppel, a promise supporting a claim need not be as clear as a contractual promise would need to be, and that Indiana law may go further than other states in this direction of enforcing less specific promises, citing *First National Bank of Logansport v. Logan Mfg. Co.*, 577 N.E.2d 949, 955 (Ind. 1991).

HUD regulations or other circumstances apparently prevented the new agreement that Turner expected, but he took specific actions in reasonable reliance on Davis' mistaken representation.  He expended considerable effort and money to fix up the home and to make it a more valuable piece of property. Turner has come forward with fairly specific evidence about the expenses he incurred and the work he performed, so that a trier of fact could find that his reliance was definite and substantial.  For purposes of summary judgment, a reasonable trier of fact could find that injustice could be avoided only by providing some remedy for the broken promise.

At the same time, the measure of damages would not necessarily be the total amount claimed by Turner, but relief should be limited to the greater of his reliance damages or the increased value of the home.  Under a theory of promissory estoppel, this situation may be one in which the plaintiff's out-of-pocket expenses would be an excessive measure of damages.  That might be the case, for example, if the repairs and improvements were not done well or efficiently.  Or consider the classic homeowner problem of a remodeling project that costs $20,000 but adds only $10,000 to the market value of the home. Comment d to Restatement (Second) Section 90 cautions:  "Unless there is unjust enrichment of the promisor [and there is not in this case, as explained above], damages should not put the promisee in a better position than performance of the promise would have put him."

First Horizon contends that it was not unjustly enriched because it simply purchased the house at the foreclosure sale by bidding the amount already due on the Turners' mortgage loan, including late fees and penalties and the like.  But even if the market value of the house was still less than the amount owed on the loan, a trier of fact might reasonably find that the gap was less than it would have been but for Turner's efforts.  In its brief, First Horizon recognized that a truer measure of whether it was unjustly enriched would be any increased value added to the home by the improvements made by Turner.  First Horizon then incorrectly contended that there is no evidence that any additional value was added to the home.  That is simply not the case.  Turner has testified that he made improvements by spending considerable sums on materials and labor.  He has presented receipts to support the costs of that effort.  This is sufficient evidence to support an inference in favor of the non-moving plaintiff that the value of the property was enhanced, even if the total market value remained less than the total amount due.  First Horizon may buttress its opposite position with further evidence at trial, but so might plaintiff, and he has sufficient evidence now to avoid summary judgment on this basis.  These are questions that will need further exploration at trial.

## Conclusion

For the reasons stated above, First Horizon's motion for summary judgment is granted as to Counts 1, 3, 4, 5 and 6 of plaintiff's complaint.  Only one claim

survives summary judgment – the claim in Count 2 that plaintiff has labeled one for unjust enrichment but that is in substance a claim for promissory estoppel. The court will confer with counsel in the near future to set a trial date on that claim.

      So ordered.

Date:  June 3, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Thomas A. Aycock
Aycock Law Office, P.C.
Aycocklawoffice@gmail.com

Rosemary L. Borek
STEPHENSON MOROW & SEMLER
rborek@stephlaw.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

WILLIE TURNER
1208 Indian Mound Dr.
Anderson, IN 46013